Gertrude Picard CUSHING, etc., et al. v.
MARYLAND CASUALTY COM-
PANY et al.

No. 13887.

United States Court of Appeals
Fifth Circuit.

Oct. 9, 1952.

For former opinion, see 198 F.2d 536.

James J. Morrison, Arthur A. de la Houssaye, Raymond H. Kierr, Gerard A. Rault, New Orleans, La., for appellants.

Eberhard P. Deutsch, Brunswick G. Deutsch, New Orleans, La., for appellees.

Before HOLMES, STRUM and RIVES, Circuit Judges.

PER CURIAM.

It is considered and ordered that the petition for rehearing herein filed, be and the same is hereby denied.

RIVES, Circuit Judge (dissenting).

A reconsideration of this case compels me to agree with the opinion of the learned district judge, Cushing v. Texas & Pacific Railway, D.C., 99 F.Supp. 681, 1951 A.M.C. 1878, Eastern District of Louisiana, that in the enactment of the Louisiana direct-action statute, LSA–R.S.1950, Tit. 22, Sec. 655, the Legislature of that State did not intend to invade the admiralty jurisdiction constitutionally reserved to the national government.

However that may be, the Louisiana direct-action statute cannot constitutionally be construed to cover Marine insurance policies in such manner as to nullify Congressional policy limiting a shipowner's liability. It is possible that a state law might subject to the claims of the injured persons any excess of the marine liability insurance over the amount required to indemnify the shipowner. There would be substantial justice in saying that in cases of virtual destruction of the vessel and freight the insurance company should not be allowed to escape paying for the damages to the injured persons, and a statute so directing might not conflict with any feature of substantive admiralty law. However, it is not contended that the Louisiana direct-action statute is subject to that construction. In the recent case of West v. Monroe Bakery, Inc., 217 La. 189, 46 So.2d 122, 130, the Supreme Court of Louisiana quoted from an earlier case where that Court had set out the general objects, purposes and effect of the direct-action statute and italicised the following: *"The statute expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public."*

In Aetna Ins. Co. v. Houston Oil & Transport Co., 5 Cir., 49 F.2d 121, 124, Circuit Judge Foster speaking for this Court said, "Policies of marine insurance are governed by the general admiralty law." In that case a Texas statute authorizing

recovery by a mortgagee to whom loss is payable under a fire insurance policy, notwithstanding the insured's breach of warranty, was held inapplicable to a policy covering a vessel on navigable waters. The Court said: "It was a maritime contract, and therefore governed by the general admiralty law and not by the law of Texas."

That principle was not changed by the McCarran Act, 15 U.S.C.A. § 1011 et seq. That Act was passed to meet the South Eastern Underwriters Association Case [U. S. v. Southeastern Underwriters Ass'n], 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, and was never intended to validate state laws contravening provisions of the constitution other than the commerce clause, or violative of federal statutes other than interstate commerce. Prudential Insurance Company v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342.

The Louisiana direct-action statute cannot operate to restrict the shipowner's freedom to contract through insurance for his own protection and still to avail himself of the limitation of his liability under the Federal statute, 46 U.S.C.A. § 183; it cannot be given the practical effect of preventing the shipowner from protecting himself against liability to an extent that includes his interest in the vessel and her freight. This principle seems to me to be settled by the opinion of the Supreme Court in The City of Norwich, 118 U.S. 468, 504, 6 S.Ct. 1150, 1163, 30 L.Ed. 134, where it was said:

"We are not only satisfied that the law does not compel the ship-owner to surrender his insurance in order to have the benefit of limited liability, but that a contrary result would defeat the principal object of the law. That object was to enable merchants to invest money in ships without subjecting them to an indefinite hazard of losing their whole property by the negligence or misconduct of the master or crew, but only subjecting them to the loss of their investment. Now, to construe the law in such a manner as to prevent the merchant from contracting with an insurance company for indemnity against the loss of his investment, is contrary to the spirit of commercial jurisprudence. Why should he not be allowed to purchase such an indemnity? Is it against public policy? That cannot be, for public policy would equally condemn all insurance by which a man provides indemnity for himself against the risks of fire, losses at sea, and other casualties. To hold that this cannot be done tends to discourage those who might otherwise be willing to invest their money in the shipping business."

I am in agreement with what was so well said of that case by the learned district judge [99 F.Supp. 681, 684.]:

"It is true that in the City of Norwich the Supreme Court had before it for decision only the question of the accountability in limitation proceedings for the owner's hull insurance. However, it is clear from the reasoning in the City of Norwich that no real distinction can be drawn in this connection between hull and marine protection and indemnity insurance."

For the foregoing reasons, I respectfully dissent.