525 So.2d 1067 (1988)
Dimitrios GIANNOULEAS
v.
PHOENIX MARITIME AGENCIES, INC., et al.
No. CA 86 1658.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
Rehearing Denied March 30, 1988.
Writ Granted June 2, 1988.
Paul H. Dué, Charles W. Roberts, Baton Rouge, for plaintiff-appellant Dimitrios Giannouleas.
Ashton R. O'Dwyer, Jr., New Orleans, for defendant-appellee Phoenix Maritime Agencies, Inc., et al.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
COVINGTON, Chief Judge.
This appeal primarily presents the question of whether the courts of this state may entertain a suit by a Greek seaman against his Panamanian-Greek employer, its foreign insurer, and its U.S. agent for injuries the seaman received while on shore leave in this state. Because we find that the exercise of personal jurisdiction over the defendants in this instance would exceed the limits of Due Process, we affirm the dismissal of plaintiff's case by the trial court.

FACTS
The material facts are not in dispute. On November 15, 1981, the M/V STAMY, under Greek flag, was anchored in the Mississippi River in St. Charles Parish near St. Rose, Louisiana. Plaintiff was employed *1068 at the time as third engineer aboard the vessel by Cosmian Compania Naviera S.A. (Cosmian), a corporation domiciled in Panama, but with its principal office and sole base of operations in Piraeus, Greece, which also owned the vessel. Plaintiff went ashore that afternoon with two other crew members and spent the evening in New Orleans, where he admittedly became extremely intoxicated. He and his companions returned to St. Charles Parish via taxi, where plaintiff allegedly refused to accompany them aboard the STAMY, announcing his intention to return to New Orleans. The other two crew members returned to the ship, and plaintiff was found by St. Charles Parish sheriff's deputies several hours later injured and unconscious by a roadside near the ship's landing. Plaintiff does not remember any details of the incident after leaving New Orleans. Two theories have been presented by plaintiff for his injuries: (1) he was struck by a car, or (2) he was attacked by a group of black people for unknown reasons.
Plaintiff filed a claim against his employer Cosmian in the Court of First Instance of Piraeus, the Greek trial court for worker's compensation benefits under Greek law on December 8, 1982. The court there found that plaintiff was not eligible for compensation since "the circumstances of his injury do not constitute a labor accident in the meaning of Art. 1 of Art. 551/15," the provision of Greek law which the parties herein agree covers labor disputes, including those between maritime workers and their employers. The court further stated, "the real circumstances which led to plaintiff's injury, whether it was caused by an automobile accident or by attack by some unknown persons, are not necessarily related to his maritime employment and its consequences. They might have occurred irrespective of it." This decision was handed down on April 4, 1983. Plaintiff appealed that decision on June 9, 1983, to the Piraeus Court of Appeal. Plaintiff later voluntarily dismissed this appeal.
Meanwhile, plaintiff filed suit in East Baton Rouge Parish on July 18, 1984, two years and eight months after his injuries, against his employer, Cosmian, its protection and indemnity insurer, United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Ltd., and Phoenix Maritime Agencies, Inc., a New York corporation which sometimes acted as agent for the STAMY when the vessel called at certain U.S. ports. Neither the insurer nor the vessel agent is authorized or licensed to do business within this state, nor does either maintain any office in the state.
Defendants filed exceptions raising objections of lack of procedural capacity of the plaintiff, lis pendens, improper venue, lack of personal jurisdiction, lack of subject matter jurisdiction, no right of action, no cause of action, and prescription. Hearings were held on May 31, 1985, January 24, 1986, and March 7, 1986, on the exceptions, and on June 19, 1986, the trial court rendered judgment dismissing plaintiff's action. The judgment reads, "Considering the exceptions filed on behalf of defendants in the above-styled and numbered cause, and particularly the exception of lis pendens, judgment is hereby rendered...." After plaintiff's motion for new trial was denied by the trial court, he filed this devolutive appeal, contending that the trial judge incorrectly based the dismissal on the exception of lis pendens when that exception does not apply here. Plaintiff points to the following language of the trial judge in his written reasons for judgment in support of his argument: "This is a proper case for maintaining an exception of lis pendens, and the court so holds. Judgment is rendered maintaining that exception and dismissing the suit at plaintiff's costs."

ARGUMENT
Defendants maintain that the dismissal was proper based on all of the exceptions raised below, not just lis pendens, as well as on the basis of res judicata, which objection was raised for the first time on appeal under LSA-C.C.P. Art. 2163 and 927. Thus, counsel for both parties have ably and extensively briefed arguments pertaining to the applicability of federal procedural rules to a maritime action in a state court, choice of law (Greek or United States), finality of judgments under Greek law where an appeal has been voluntarily dismissed, causes of action under the Jones *1069 Act and general maritime law, and of course, lis pendens and res judicata, to name some of the issues raised. While all of these issues are viable on the merits of this case, we find ourselves unable to reach the merits because of grave problems with jurisdiction over the persons of the defendants in light of the pronouncements of the U.S. Supreme Court in Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) and Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

LAW
As all three defendants are nonresidents, two of them being of foreign nationality, plaintiffs seek to invoke jurisdiction under La.R.S. 13:3201, Louisiana's Long-Arm Statute.[1] A dual analysis is required to determine whether Louisiana has personal jurisdiction over a nonresident defendant under La.R.S. 13:3201. First, the facts of the case must fit within one of the provisions of the Long-Arm Statute. Second, the assertion of jurisdiction must comport with constitutional due process standards. McBead Drilling Company v. Kremco, Ltd., 509 So.2d 429, 431 (La.1987). We begin our discussion with the second prong of the analysis, as it obviates the need for discussion of the first prong.
The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987). In the deliberation of this matter, the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. Burger King Corporation v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed. 2d 528 (1985), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). These minimum contacts must comprise a "substantial connection" with the forum State, rather than "random," "fortuitous," or "attenuated contacts"; the defendant must have purposefully directed his activities at forum residents. Burger King, supra, 105 S.Ct. at 2183-2185 (emphasis ours). Moreover, once it has been decided that a defendant has purposefully established minimum contacts within the forum State, these contacts are to be evaluated in light of other factors, as minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. Burger King, supra, 105 S.Ct. at 2185, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980). Such factors include the burden on the defendant, the forum State's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief. Additional considerations in World-Wide Volkswagen were the interests of the several States, in addition to the forum State, in the efficient judicial resolution of the dispute and the advancement of substantive policies. In the context of disputes between two or more foreign parties in a domestic forum, this advice calls for a court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [state] court. The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. Asahi, supra, 107 S.Ct. at 1034-1035.
*1070 In Asahi, neither litigant was a resident of California, the forum state. A claim for indemnity was made by a Taiwanese corporation against a Japanese corporation in a products liability suit, where the initial plaintiff was a California resident, but the main demand had been settled and dismissed. Thus, only the indemnity claim between the two nonresident parties was left for trial. In discussing the factors relevant to the inquiry regarding exercise of jurisdiction, Justice O'Connor, who was writing for the Court, stated:
The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. 107 S.Ct. at 1034.
She concluded,
Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.... Moreover, it is not at all clear at this point that California law should govern the question [of indemnity].... Considering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a California court over Asahi in this instance would be unreasonable and unfair. 107 S.Ct. at 1034-1035.
In the case at bar, there are serious questions as to whether defendants have established sufficient minimum contacts to comprise a substantial connection with Louisiana. None of the defendants maintain offices in the state or have any employees here. Defendant Cosmian is a corporation organized under the laws of Panama, but based in Greece and owned entirely by Greek residents. Its contact with Louisiana lies in the infrequent calls of its vessel, the STAMY, at the Port of New Orleans to load and unload. Even assuming arguendo that these calls are not too "attenuated" to form a substantial connection, the other factors which we are obliged to consider by Burger King and Asahi point to unfairness in requiring the defendants to litigate this matter here.
The burden on the defendant to litigate this matter here is obvious. Aside from the question of distance and problem of a foreign language, defendant Cosmian[2] is being asked to submit its dispute with its Greek employee to a foreign nation's judicial system.
Like the plaintiff in Asahi, the plaintiff here is not a resident of the forum state. It is undisputed that he was repatriated to his homeland Greece after his initial hospitalization. Thus, in the words of the Asahi Court, Louisiana's "legitimate interests in the dispute have considerably diminished." It is not at all clear that Louisiana or even federal law should govern this dispute between a Greek seaman and his Panamanian-Greek employer merely because the site of his injuries was here.[3] As defendants point out rather persuasively in their several briefs, such a rationale would produce the ridiculous result in any given case of subjecting the same two parties to an infinite number of choices of law, depending on where the vessel happened to be at any one time. Such a result is to be deplored in the interests of consistency and facilitation of all aspects of international trade.
As for the plaintiff's interest in obtaining relief, it is undisputed that he had the opportunity to seek redress, and did so, in the courts of Greece. It is not for us to question the outcome or extent of his litigation there; we merely note that declining to exercise jurisdiction over the defendants would not in this instance be a deprivation of plaintiff's only forum.
We recognize that this case for personal injuries may be distinguished from Asahi *1071 in that Asahi dealt with a products liability case and the stream-of-commerce theory, a somewhat more nebulous connection of wrongful act to forum than is alleged here. However, this distinction relates more nearly to the initial inquiry of whether minimum contacts exist, than to the secondary question of whether there are other factors that make the exercise of personal jurisdiction fair, despite minimum contacts.
For these reasons, we hold that the exercise of personal jurisdiction by a Louisiana court over the defendants in this instance would be unreasonable and unfair, inconsistent with fair play and substantial justice. The judgment of the trial court dismissing plaintiff's suit[4] is affirmed, at plaintiff's costs.
AFFIRMED.
NOTES
[1] Plaintiff also seeks to invoke La.R.S. 13:3471(1), La.R.S. 13:3479, Louisiana's Foreign Water Craft Statute, and La.R.S. 22:655, Louisiana's Direct Action Statute, as additional support for his argument that there should be an exercise of jurisdiction over defendants. All of these statutes, however, are subject to the same constitutional requirements as the Long-Arm Statute; therefore, our discussion will not analyze these provisions separately.
[2] Our focus is on defendant Cosmian in this discussion because any liability on the part of the other two defendants in this instance would be derivative of that of Cosmian based upon their respective relationships with Cosmian.
[3] One of the issues raised in the trial court and on appeal was that a provision in the contract of employment, which was translated for the trial court, between the plaintiff and Cosmian specified the applicability of Greek law to any disputes between the parties. We need not address this issue in view of the preclusion dictated by the jurisdictional issue.
[4] Plaintiff's focus on the language in the trial court's reasons for judgment rather than the language of the judgment itself is inappropriate. Both our Code of Civil Procedure (Articles 1917 and 1918) and our jurisprudence have ever maintained the distinctions between reasons for judgment and the judgment itself. Since the judgment stated that all exceptions were considered, and an exception to personal jurisdiction was filed by defendants, the dismissal was correct even if the emphasis on lis pendens was inappropriate.