Blaine DELAUNE

v.

SAINT MARINE TRANSPORTATION
CO. and Certain Underwriters
at Lloyd's.

Civ. A. No. 89–3019.

United States District Court,
E.D. Louisiana.

Nov. 7, 1990.

Patrick Hufft, New Orleans, La., for plaintiff.

Daniel Daboval, William A. McLellan, New Orleans, La., for defendants.

ORDER AND REASONS

PATRICK E. CARR, District Judge.

This matter is before the Court on the plaintiff's motion for re-hearing on defendant's motion for summary judgment [Record Document No. 30].

Determining in its discretion that oral argument is unnecessary, the Court CANCELED the hearing on the motion, previously set for October 24, 1990. For the following reasons, the Court now DENIES the motion.

This is a maritime personal injury action where the plaintiff sued, among others, the marine protection and indemnity underwriters for a vessel owned and operated by the alleged tortfeasor. The Court determines that two recent Louisiana Supreme Court opinions addressing the term "ocean marine insurance" in the Louisiana Insurance Code, *Deshotels v. SHRM Catering Services, Inc.*, 538 So.2d 988 (La.1989) and *Backhus v. Transit Casualty Co.*, 549 So.2d 283 (La.1989), implicitly but necessarily overruled earlier Fifth Circuit opinions that had held that an injured person may bring a direct action against a marine P & I underwriter under the Louisiana Direct Action Statute, La.R.S. 22:655.

I.

The plaintiff alleges that on May 10, 1989, he was injured while working as a seaman for Saint Marine Transportation Company aboard one of its vessels. The alleged accident occurred in Texas.

On July 7, 1989, he sued Saint Marine for unseaworthiness and Jones Act negligence. Subsequently, on March 22, 1990, he amended his complaint to add as defendants certain Underwriters at Lloyd's; the Underwriters had issued two marine protection and indemnity (P & I) policies—one primary and one excess—covering the vessel at issue on the date of the alleged accident.

In September 1990, the Underwriters moved for summary judgment on two grounds. First, as a factual matter, the Louisiana Direct Action Statute does not apply: the alleged accident did not occur in

and the two insurance policies were neither written in nor delivered to Louisiana. Second, as a legal matter, the Louisiana Direct Action Statute does not apply: the policies at issue here are marine P & I policies, and the underwriters for such policies are not subject to the Louisiana Direct Action Statute.

In support of the first ground, the Underwriters supplied the affidavit of the Texas-based insurance broker who obtained the two P & I policies at issue and who states that both policies were written in London, have been kept in London, and were never delivered to Louisiana. The plaintiff sought a continuance of the Underwriters' motion so that he could depose the broker who supplied the affidavit; according to the plaintiff, Saint Marine is a Louisiana corporation.

By Minute Entry, the Court granted the Underwriters' motion; the Court briefly explained:

> Marine P & I policies constitute "ocean marine" insurance within the meaning of the Louisiana Insurance Code. *See Sifers v. General Marine Catering Co.,* 892 F.2d 386, 391 (5th Cir.1990) (per curiam); *Backhus v. Transit Casualty Co.,* 549 So.2d 283 (La.1989). The direct action statute, La.R.S. 22:655, appears within the same Part of the Louisiana Insurance Code as La.R.S. 22:611; thus, it follows that the direct action statute applies only "to insurances other than ocean marine ... insurances." *See Deshotels v. SHRM Catering Services,* 538 So.2d 988, 992 (La.1989).

> While pre-*Deshotels/Backhus* cases exist in which a plaintiff sued a marine P & I insurer under the direct action statute, these cases are not binding: not only did none address the "ocean marine" insurance exception for the Part of the Louisiana Insurance Code in which the direct action statute appears, but also they were decided prior to the definitive opinions of the Louisiana Supreme Court

in *Deshotels* and *Backhus* on the governing term at issue here, "ocean marine" insurance.

"Because the Court's holding in favor of Lloyd's d[id] not turn on the location(s) where Lloyd's policies were written or delivered," the Court denied the plaintiff's request for a continuance.

The plaintiff now seeks a "re-hearing" on the Underwriters' motion. In support, he attaches a recent unpublished minute entry by Judge Wicker that rejected the Underwriters' second, legal argument.[1] Yet he submits no evidence to dispute the contents of the Texas broker's affidavit that the Underwriters submitted in support of their motion; the record contains no notice by the plaintiff to depose the Texas broker.

The deadline for taking all fact discovery has now passed. The final pretrial conference has just been held, where the Court set the matter for trial.

## II.

The central issue here is whether the Louisiana Direct Action Statute, La.R.S. 22:655, applies to underwriters of marine P & I policies.

Last year, in *Deshotels v. SHRM Catering Services, Inc.,*[2] the Louisiana Supreme Court observed in dictum that ocean marine insurance is not subject to the Direct Action Statute. In *Backhus v. Transit Casualty Co.,*[3] the court then held that a marine P & I policy constitutes ocean marine insurance and thus that by virtue of a provision that the [Louisiana] Insurance Guaranty Association (LIGA) Law, La.R.S. 22:1375–1394, "shall apply to all kinds of direct insurance, except ... ocean marine insurance," the LIGA Law does not apply to such policies.

Almost forty years before *Backhus* and *Deshotels,* the Fifth Circuit had held in *Cushing v. Maryland Casualty Co.*[4] that underwriters to a marine P & I policy could

**1.** *See Tassin v. Hess Marine Transportation, Inc.,* Civil Action No. 88–1938, Document No. 81, 1990 WL 93831 (E.D.La. June 27, 1990).

**2.** 538 So.2d 988, 992 (La.1989).

**3.** 549 So.2d 283 (La.1989).

**4.** 198 F.2d 536, 538–39 (5th Cir.), *reh'g denied,* 198 F.2d 1021 (5th Cir.1952) (per curiam) (2–1), *vacated on other grounds,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954).

be sued under the Direct Action Statute. Later Fifth Circuit panels followed this holding;[5] without further addressing the issue, at least two Louisiana appellate courts held the same.[6] Because *Cushing* is the law of the Fifth Circuit, this Court must follow its interpretation of the Direct Action Statute "until the Louisiana courts decide the matter differently."[7] Thus, this Court must decide whether *Cushing*'s interpretation is "irreconcilable with"[8] *Backhus* and *Deshotels.*

To reach port, courts have had to dead reckon through ancient precedent "lurking in the fog."[9] Guided by the Supreme Court's new compass, this Court now plots a new course to steer towards the clear light of the Louisiana Legislature.

### A.

 Federal maritime law provides no right for a third-party, such as a personal injury plaintiff, to sue his alleged tortfeasor's insurers or indemnity underwriters directly.[10] The same is true for Texas state law.[11]

"Without enabling legislation, the right to direct action does not exist" under Louisiana state law either.[12] But with the Direct Action Statute, Louisiana has enacted just such legislation. Thus, the Court must determine whether this statute reaches the circumstances here.[13]

---

**5.** *See Coleman v. Jahncke Service, Inc.,* 341 F.2d 956, 960–61 (5th Cir.) (for "a policy of hull insurance [that] was also a public liability policy"), *reh'g denied,* 348 F.2d 868 (5th Cir.1965) (per curiam), *cert. dismissed in part sub nom. Jahncke Service, Inc. v. Greater New Orleans Expressway Comm'n,* 382 U.S. 967, 86 S.Ct. 525, 15 L.Ed.2d 463 (1966) *and cert. denied in part sub nom. Jahncke Service, Inc. v. Greater New Orleans Expressway Comm'n,* 382 U.S. 974, 86 S.Ct. 538, 15 L.Ed.2d 465 (1966); *Olympic Towing Corp. v. Nebel Towing Co.,* 419 F.2d 230, 236 (5th Cir.) (a P & I policy), *reh'g en banc denied,* 419 F.2d 230, 238 (5th Cir.1969) (per curiam) (7–6), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970), *overruled on other grounds in Crown Zellerbach Corp. v. Ingram Industries, Inc.,* 783 F.2d 1296 (5th Cir.) (en banc), *cert. denied,* 479 U.S. 821, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986); *Continental Oil Co. v. London Steam–Ship Owners' Mutual Insurance Ass'n,* 417 F.2d 1030, 1033 n. 13 (5th Cir.1969) (dictum) (underwriters in a "P & I Club"), *cert. denied,* 397 U.S. 911, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970); *Albany Insurance Co. v. Bengal Marine, Inc.,* 857 F.2d 250, 255 (5th Cir.1988) (tower's P & I policy); *cf. Lovless v. Employers' Liability Assurance Corp.,* 218 F.2d 714, 715 (5th Cir. 1955) (per curiam) (for a "standard workmen's compensation and employers' liability policy" with "a maritime endorsement making the damage coverage for employees' injuries applicable to maritime employment"); *Ex parte Tokio Marine & Fire Insurance Co.,* 322 F.2d 113, 116–17 & n. 8 (5th Cir.1963) (staying for later decision a direct action against underwriters to a "tower's liability policy"), *followed in Guillot v. Cenac Towing Co.,* 366 F.2d 898, 904–05 (5th Cir.1966) (for, among others, standard P & I underwriters).

**6.** *See Tesvich v. 3–A's Towing Co.,* 547 So.2d 1106 (La.App. 4th Cir.), *writs denied,* 552 So.2d 383–84 (La.1989); *Symeonides v. Cosmar Compania Naviera, S.A.,* 433 So.2d 281, 288 (La.App. 1st Cir.), *writ denied,* 440 So.2d 731 (La.1983),

*cert. denied,* 465 U.S. 1079, 104 S.Ct. 1442, 79 L.Ed.2d 762 (1984).

**7.** *Olympic Towing,* 419 F.2d at 236.

**8.** *See Carter v. South Central Bell,* 912 F.2d 832, 840 (5th Cir.1990).

**9.** *Coleman,* 341 F.2d at 957.

**10.** *Continental Oil Co. v. Bonanza Corp.,* 677 F.2d 455, 459–60 (5th Cir.1982) (citing *Stuyvesant Insurance Co. of New York v. Nardelli,* 286 F.2d 600, 602–03 (5th Cir.1961)), *vacated in part on other grounds,* 706 F.2d 1365 (5th Cir.1983) (en banc).

**11.** *Id.* at 460 (citing *Russell v. Hartford Casualty Insurance Co.,* 548 S.W.2d 737 (Tex.Civ.App. 1977—writ ref'd n.r.e.)); *see Conoco, Inc. v. Republic Insurance Co.,* 819 F.2d 120, 123–24 (5th Cir.1987); *Nelms v. State Farm Mutual Automobile Insurance Co.,* 463 F.2d 1190, 1191–92 (5th Cir.1963) (per curiam). *See generally* 8 Appleman, *Insurance Law and Practice* § 4865, at 591–95 (1981).

**12.** *Logan v. Hollier,* 424 So.2d 1279, 1281 (La. App. 3d Cir.1982) (citing *Vincent v. Penrod Drilling Co.,* 372 So.2d 807, 811 (La.App. 3d Cir.), *writ denied,* 375 So.2d 646 (La.1979)).

**13.** *See generally Crown Zellerbach,* 783 F.2d at 1298 (citing *Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955)). While the parties have not submitted a copy of the two policies at issue here, the plaintiff does not contend that his right to join the Underwriters arises from any source other than the Direct Action Statute. The Court merely adds that marine P & I policies adopt the language of indemnification (versus the language of direct liability insurance) and that most include both no-assignment and no-action clauses. *See, e.g.,* 7A *Benedict on Admiralty* ch. 2 (6th ed.) (collecting standard marine P & I policies and clauses).

### B.

The Louisiana Direct Action Statute, La. R.S. 22:655, provides as follows:

**§ 655. Liability policy; insolvency or bankruptcy of insured and inability to effect service of citation or other process; direct action against insurer**

A. No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the insured person, or his or her survivors, mentioned in Civil Code Art. 2315, or heirs against the insurer.

B. (1) The injured person or his or her survivors or heirs mentioned in Subsection A, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only. However, such action may be brought against the insurer alone only when:

(a) The insured has been adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of competent jurisdiction;

(b) The insured is insolvent;

(c) Service of citation or other process cannot be made on the insured;

(d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons; or

(e) When the insurer is an uninsured motorist carrier.

(2) This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if such provisions are not in violation of the laws of this state.

C. It is the intent of this Section that any action brought under the provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.

D. It is also the intent of this Section that all liability policies within their terms and limited are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insured under the omnibus clause, for any legal liability said insured may have as or for a tortfeasor within the terms and limits of said policy.

The statute "represents the culmination of a long developmental process which began with the passage of Act 253 of 1918." [14]

In 1918, the Louisiana Legislature enacted legislation that in effect permitted an injured party to sue a liability insurer directly if the insured/alleged tortfeasor was insolvent or bankrupt.[15] Twelve years la-

---

14. *Webb v. Zurich Insurance Co.*, 251 La. 558, 205 So.2d 398, 402 (1967).

15. *See* 1918 La.Acts 253, § 1.

ter, following the lead of the Wisconsin Legislature concerning injury "caused by animal or by any [motive] vehicle," [16] the Louisiana Legislature amended this legislation to provide in effect that, irrespective of insolvency or bankruptcy of the insurer/alleged tortfeasor, an injury party may sue a liability insurer directly.[17]

In 1948, the Legislature repealed this legislation and replaced it as part of a single, codified insurance code.[18] Chapter 14 of this new code contained the direct action provisions in section 14.45 and provided in section 14.01 that "[t]he applicable provisions of this chapter shall apply to insurances other than ocean marine ... insurances." This new code did not, however, define the precise term "ocean marine insurance."

Two years later, as part of its organized codification of the bulk of Louisiana laws, the Legislature recodified the 1948 Insurance Code into Title 22 of the 1950 Revised Statutes—Chapter 14 of the 1948 Insurance Code becoming Part XIV of the new code, and specifically, section 14.01 becoming R.S. 22:611 and section 14.45 becoming R.S. 22:655.[19] These two counterparts to the 1948 Insurance Code contained no substantive changes. Since then, the Legislature has amended the Direct Action Statute, R.S. 22:655, six times;[20] in none of these amendments, however, did the Legislature directly or indirectly indicate whether, irrespective of R.S. 22:611, the Direct Action Statute was intended to apply to "ocean marine insurance" or specifically to marine P & I policies.

The pertinent portion of R.S. 22:611 has remained effectively unchanged since its enactment in 1950: "The applicable provisions of this Part [sections 611–690] shall apply to insurance other than ocean marine ... insurances." [21] In 1989, however, the Legislature added a second subsection to R.S. 22:611 so that the whole section now reads in pertinent part: [22]

### § 611. Scope of Part

A. The applicable provision of this Part [sections 611–690] shall apply to insurance other than ocean marine and foreign trade insurances....

B. The exceptions in Subsection A of this Section do not apply to R.S. 22:627. The only exceptions from the requirements of R.S. 22:627 are those specifically stated therein.

While neither Part XIV of the Insurance Code, which includes both R.S. 22:611 and 22:655, nor the general definitional sections of the entire Insurance Code, R.S. 22:5–22:6, define the term "ocean marine insurance," the Legislature recently enacted a definition for the Insurance Code's LIGA Law; specifically, it enacted R.S. 22:1379(9) [23] to provide that for purposes of the LIGA Law:

"Ocean marine insurance" includes marine insurance as defined in R.S. 22:6(13), except for inland marine, as well as any other form of insurance, regardless of the name, label or marketing designation of the insurance policy, which insures against maritime perils or risks and other related perils or risks, which are usually insured against by traditional marine insurances such as hull and machinery, marine builders' risks, and marine protection and indemnity. Such perils and risks insured against include without limitation loss, damage or expenses or legal liability of the insured for loss, damage, or expense arising out of or incident to ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use of ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss

---

**16.** *See* 1925 Wis.Laws, c. 372, § 2 (enacting Wis. Stat. § 204.30, *recodified as amended at* Wis. Stat.Ann. § 632.24 (West 1980)).

**17.** *See* 1930 La.Acts 55, § 2.

**18.** *See* 1948 La.Acts 195.

**19.** *See* 1950 La.Acts 2 of Extraordinary Session, §§ 1–2.

**20.** *See* 1950 La.Acts 541, § 1; 1956 La.Acts 475, § 1; 1958 La.Acts 125; 1962 La.Acts 471, § 1; 1988 La.Acts 934, § 1; 1989 La.Acts 117, § 2.

**21.** (left blank for publication).

**22.** *See* 1989 La.Acts 563, § 1.

**23.** *Added by* 1989 La.Acts 688, § 1 (July 7, 1989).

or damage to the property of the insured or another person.

Similar to Part XIV, the LIGA Law "shall apply to all kinds of direct insurance, except ... ocean marine insurance."[24]

### C.

Within three weeks after the effective date of the 1950 Insurance Code, the towboat JANE SMITH collided with a bridge in Louisiana and sank; some crew members were injured, others died. Soon thereafter, the owner and charterer of the vessel commenced an action to limit their liability under 46 U.S.C.App. §§ 183 and 186. Undaunted by the limitation injunction, the personal injury plaintiffs commenced a separate direct action under the Jones Act against two insurers. One policy sued upon was "a workmen's compensation and employer's liability policy" [WC/EL policy] "which contains a special endorsement making its terms applicable to maritime employment"; the second was "a 'protection and indemnity' policy ... in which both the owner and the charterer are named."[25] The district court granted summary judgment for the two insurers, on the grounds that the Direct Action Statute by its own terms did not apply to "policies of marine insurance" and that, in any case, a direct action would contravene Congress' purpose in the Limitation-of-Liability Act.[26] In support of its first ground, the district court noted on the one hand that the Direct Action Statute applies only to "liability insurance" and on the other that the Insurance Code gives in La.R.S. 22:6(4) a definition for "liability insurance" and in La.R.S. 22:6(13) a separate definition for "marine and transportation (inland marine) insurance," which under La.R.S. 22:6(13)(e) includes "marine protection and indemnity insurance."[27]

On appeal in *Cushing v. Maryland Casualty Co.*,[28] the Fifth Circuit reversed. Like the district court below, the Fifth Circuit made no distinction between the two types of policies and did not cite to or address La.R.S. 22:611. Noting the Direct Action Statute's remedial nature,[29] the court suggested that the term "liability insurance" in the Direct Action Statute need not and ought not be "limited to the one type of liability insurance defined in Sec. 6(4)."[30] In sum, then, the court held "that as a matter of local [Louisiana state] law the District Court had read the Louisiana statute too restrictively."[31] The court then went on to hold that the direct action did not conflict with the federal Limitation-of-Liability Act.[32]

On further appeal, the Supreme Court reversed again in a 4–1–4 decision that has been described as a riddle,[33] a grisly spectre,[34] a Delphic answer,[35] and an enigma.[36] The Court vacated the Fifth Circuit's opinion and remanded the case to the district court for a stay pending the completion of the parallel limitation action. The Supreme Court's various opinions, however, concerned solely the effect of the Limitation-of-Liability Act; the interpretation of the Direct Action Statute as a matter of Louisiana state law was "a question not open here" at the Supreme Court.[37]

---

**24.** La.R.S. 22:1377(A) (*enacted by* 1970 La.Acts 81, § 1 *and amended in other respects by* 1989 La.Acts 618, § 1 *and* 1989 La.Acts 620, § 1 *and* 1990 La.Acts 101, § 1).

**25.** *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 411, 74 S.Ct. 608, 609, 98 L.Ed. 806 (1954).

**26.** *See Cushing v. Texas & Pacific Railway Co.*, 99 F.Supp. 681, 683–84 (E.D.La.1951).

**27.** *See id.* at 683.

**28.** 198 F.2d 536 (5th Cir.), *reh'g denied*, 198 F.2d 1021 (5th Cir.1952) (per curiam) (2–1).

**29.** *Id.* at 538 & n. 2.

**30.** *Id.* at 538.

**31.** *Maryland Casualty Co. v. Cushing*, 347 U.S. at 412, 74 S.Ct. at 609.

**32.** *See Cushing v. Maryland Casualty Co.*, 198 F.2d at 539–40.

**33.** *Tokio Marine*, 322 F.2d at 114 (Brown, J.); *Guillot*, 366 F.2d at 900 (Brown, J.); *see also* *Continental Oil*, 417 F.2d at 1032 (Brown, J.).

**34.** *Coleman*, 341 F.2d at 957 (Wisdom, J.); *see also Continental Oil*, 417 F.2d at 1032 (Brown, J.).

**35.** *Continental Oil*, 417 F.2d at 1032 (Brown, J.).

**36.** *Olympic Towing*, 419 F.2d at 239 (Brown, J., dissenting from denial of petition for rehearing en banc).

**37.** *See Maryland Casualty Co. v. Cushing*, 347 U.S. at 412, 74 S.Ct. at 609–10.

Recognizing that the Supreme Court did not question the Fifth Circuit panel's interpretation of the Direct Action Statute as a matter of Louisiana law, subsequent Fifth Circuit panels adhered to this interpretation.[38] In only one of these cases, *Coleman v. Jahncke Service, Inc.*,[39] did the court note the provisions of La.R.S. 22:611.[40] Yet *Cushing* had necessarily even if unintentionally rejected the import of La.R.S. 22:611, no Louisiana appellate court had yet spoken to the contrary, and certification to the Louisiana Supreme Court was still not an available resource;[41] thus, the court in *Coleman* was bound to follow the circuit precedent of *Cushing*.[42]

### D.

This Court has found only one Louisiana state court decision that directly addressed whether a direct action could be asserted against a marine P & I underwriter. Citing no more than one of *Cushing*'s progeny, *Olympic Towing Corp. v. Nebel Towing Co.*,[43] and not addressing La.R.S. 22:611, a Louisiana appellate court held in *Symeonides v. Cosmar Compania Naviera, S.A.*[44] that such an action could be asserted.

This Court has found only one other Louisiana state court decision to uphold a direct action against marine P & I underwriters.[45] In *Tesvich v. 3–A's Towing Co.*,[46]

**38.** *See* cases cited in footnote 5 above. Other Fifth Circuit panels have upheld direct actions against marine P & I underwriters, with no further mention of the Direct Action Statute. *See Travelers Indemnity Co. v. Atlantic Express Line*, 837 F.2d 187 (5th Cir.), *reh'g denied*, 846 F.2d 7 (5th Cir.) (per curiam), *cert. denied sub nom. Pacindat Mutual Protection & Indemnity Ass'n, Ltd. v. Travelers Indemnity Co.*, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Miller v. Royal Netherlands Steamship Co.*, 508 F.2d 1103 (5th Cir.1975); *cf. In re Talbott Big Foot, Inc.*, 887 F.2d 611, 613 n. 2 (5th Cir.1989) ("[The underwriter] does not contend that the Louisiana Direct Action Statute cannot apply to a marine liability insurance policy such as a P & I policy."); *Goar v. Compania Peruana de Vapores*, 688 F.2d 417 (5th Cir.1982) (only the plaintiff appealed).

Further Fifth Circuit opinions have addressed similar direct actions that were dismissed on other grounds. *See Landry v. Travelers Indemnity Co.*, 890 F.2d 770 (5th Cir.1989); *Levron v. Gulf International Marine, Inc.*, 854 F.2d 777 (5th Cir.1988); *Travelers Indemnity Co. v. Calvert Fire Insurance Co.*, 798 F.2d 826, 830 n. 5 (5th Cir.1986), *reh'g on other grounds*, 836 F.2d 850 (5th Cir.1988); *Sacher v. Columbia Steamship Co.*, 493 F.2d 1109 (5th Cir.1974) (per curiam).

**39.** 341 F.2d 956 (5th Cir.), *reh'g denied*, 348 F.2d 868 (5th Cir.1965) (per curiam), *cert. dismissed in part sub nom. Jahncke Service, Inc. v. Greater New Orleans Expressway Comm'n*, 382 U.S. 967, 86 S.Ct. 525, 15 L.Ed.2d 465 (1966) *and cert. denied in part sub nom. Jahncke Service, Inc. v. Greater New Orleans Expressway Comm'n*, 382 U.S. 974, 86 S.Ct. 538, 15 L.Ed.2d 465 (1966).

**40.** *See id.* at 960, *aff'g Greater New Orleans Expressway Comm'n v. Tug Claribel*, 222 F.Supp. 521, 526 (E.D.La.1963). Having overlooked this single citation from *Cushing*'s progeny, this Court misstated in its Minute Entry that none of these cases "address[es] the 'ocean marine' insurance exception for the Part of the Insurance Code in which the direct action statute appears."

**41.** Not until 1973, after the Louisiana Legislature enacted La.R.S. 13:76 (now La.R.S. 13:72.1) and the Louisiana Supreme Court adopted its Rule XII–A (now Rule XII), was certification from the Fifth Circuit to the Louisiana Supreme Court available.

**42.** *See Olympic Towing*, 419 F.2d at 236. *See generally Ryals v. Estelle*, 661 F.2d 904, 906 (5th Cir. Nov. 1981) (per curiam).

**43.** 419 F.2d 230, 236 (5th Cir.), *reh'g en banc denied*, 419 F.2d 238 (5th Cir.1969) (per curiam) (7–6), *cert. denied*, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970), *overruled on other grounds in Crown Zellerbach Corp. v. Ingram Industries, Inc.*, 783 F.2d 1296 (5th Cir.) (en banc), *cert. denied*, 479 U.S. 821, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986).

**44.** 433 So.2d 281, 288 (La.App. 1st Cir.), *writ denied*, 440 So.2d 731 (La.1983), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1442, 79 L.Ed.2d 762 (1984).

**45.** While this Court has found other Louisiana state court cases with direct actions against insurers in Jones Act cases, those decisions did not indicate what types of policy the insurers had issued. *See Heaton v. Gulf International Marine, Inc.*, 536 So.2d 622, 624 (La.App. 1st Cir.1988); *Vincent v. Penrod Drilling Co.*, 372 So.2d 807, 810–11 (La.App. 3d Cir.), *writ denied*, 375 So.2d 646 (La.1979); *Trahan v. Gulf Crews, Inc.*, 246 So.2d 280, 286 (La.App. 3d Cir.), *rev'd in part on other grounds*, 260 La. 29, 255 So.2d 63 (1971).

This Court has also found another Louisiana state court case where a direct action had been asserted against a marine P & I underwriter but was not addressed on appeal. *See Giannouleas v. Phoenix Maritime Agencies, Inc.*, 525 So.2d 1067 (La.App. 1st Cir.), *rev'd*, 525 So.2d 1043 (La.1988), *on remand*, 529 So.2d 1300 (La.App. 1st Cir.) (remanding for further consideration

the Louisiana Fourth Circuit so held. That court did not, however, address the propriety of a direct action, and the underwriters did not assert they were not subject to a direct action.[47]

### E.

In January 1989, on a certified question from the Fifth Circuit, the Louisiana Supreme Court in *Deshotels v. SHRM Catering Services, Inc.*[48] first addressed the term "ocean marine insurance" in the Louisiana Insurance Code. At issue in that Jones Act case was a dispute between LIGA and the plaintiff's employer whether LIGA was required by statute to provide coverage to the employer on its standard WC/EL policy with a marine endorsement. Because La.R.S. 22:1377 provides that the LIGA Law does not apply to ocean marine insurance, LIGA argued that it owed no coverage. The Supreme Court disagreed.

The court first stressed that the LIGA Law is "to be 'liberally construed' to avoid financial loss to claimants."[49] The court then surveyed the recent conflicting Louisiana federal district and lower Louisiana state court opinions on this issue. Recognizing the parallel between Part XXIX–A of the Insurance Code (viz., the LIGA Law) and Part XIV of the Insurance Code (which includes La.R.S. 22:611 and 22:655), the court also cited in its survey the Fifth Circuit's line of cases under *Cushing* and "the 'ocean marine' exclusion in LSA–R.S. 22:611."[50] In its conclusion, the court emphasized this parallel and thus cast doubt on *Cushing*:

> "[O]cean marine" insurance ... is not only excluded from LIGA coverage but also from the scope of Part XIV, which

applies to "The Insurance Contract" and includes the Louisiana direct action statute.[51]

The court agreed with those cases that distinguished between "different kinds of insurance policies, rather than [between] different risks."[52] Because WC/EL policies only "incidently cover risks associated with maritime activities,"[53] the court held that the policy at issue did not constitute ocean marine insurance and thus that LIGA owed coverage on the policy.

Soon thereafter, in *Backhus v. Transit Casualty Co.*,[54] the Supreme Court addressed a similar dispute between LIGA and a Jones Act plaintiff whether LIGA owed statutory coverage on a marine P & I policy issued to the Jones Act employer. The distinction in policy types made all the difference; concluding that marine P & I policies, unlike WC/EL policies with marine endorsements, constitute ocean marine insurance, the court held that the LIGA exception applies and thus that LIGA owed no coverage.

After surveying the general understanding of the term "ocean marine insurance" in the maritime insurance industry, the court first concluded:

> that the term "ocean marine insurance" includes protection and indemnity insurance and that protection and indemnity insurance, absent some intent on the part of the legislature to protect individuals entitled to recover under protection and indemnity policies, falls within the "ocean marine insurance" exception to Louisiana Insurance Guaranty Association protection.[55]

---

of defendants' defenses), *writ denied,* 533 So.2d 358 (La.1988); *cf. Danzy v. United States Fidelity & Guaranty Co.,* 380 So.2d 1356, 1359 n. 5 (La.1980) (citing without comment as to its correctness *Olympic Towing*).

**46.** 547 So.2d 1106 (La.App. 4th Cir.), *writs denied,* 552 So.2d 383–84 (La.1989).

**47.** *See id.* at 1112 ("defendants claim each underwriter's liability should be limited to that portion of the loss subscribed to by the individual underwriter. This position is correct.").

**48.** 538 So.2d 988 (La.1989).

**49.** *Id.* at 990 (citing La.R.S. 22:1376, 22:1378).

**50.** *Id.* at 991 (citing *Cushing, Lovless,* and *Coleman*).

**51.** *Id.* at 992.

**52.** *See id.* at 993.

**53.** *Ibid.*

**54.** 549 So.2d 283 (La.1989).

**55.** *Id.* at 289.

The court then went on to determine whether such a legislative intent existed. While repeating that the LIGA Law should be liberally construed "to protect claimants,"[56] the court stressed the limits of this interpretive guide:

> While this court can consider the reason and spirit of a law that brought about its enactment, it is not free to rewrite the law to effect a purpose that is not otherwise expressed. A liberal interpretation of the Insurance Guaranty Law, even though authorized by the Law itself, cannot overcome the specific statutory exemptions from coverage under that law. There is nothing in the Insurance Code to indicate that the Louisiana Legislature intended to exclude from Louisiana Insurance Guaranty Association protection only that aspect of ocean marine insurance related to property interests. On the contrary, the unified definition of marine insurance found in R.S. 22:6(13), when coupled with the specific limitations contained in R.S. 22:1249 and R.S. 22:1403 (excepting certain types [of] risks commonly insured under ocean or wet marine insurance policies from coverage under those statutes), indicates that the legislature was aware of the distinctions that are commonly made between types of marine insurance. Accordingly, this court must presume that the legislature could have restricted the exception contained in R.S. 22:1377 to ocean marine insurance affecting property had it desired to do so.[57]

Finding no such intent, the court rejected the plaintiff's equitable argument; resolution of any anomaly, the court noted, "must rest with the legislature."[58]

Thereafter, in January 1990, in *Sifers v. General Marine Catering Co.*,[59] the Fifth Circuit completed the recent LIGA trilogy. Although *Backhus* was decided after the 1989 LIGA Law amendments adding a specific definition of "ocean marine insurance" for the LIGA Law,[60] *Backhus* gave no indication that these amendments affected the earlier decision in *Deshotels;* thus, the Fifth Circuit found that *Deshotels* still instructed the meaning of "ocean marine insurance" under the terms of the entire Insurance Code.[61] The *Backhus*, the Fifth Circuit added, "regarded ['marine and transportation (inland marine)' insurance, defined in La.R.S. 22:6(13) ] as roughly synonymous with 'ocean marine' insurance."[62] Thus, the Fifth Circuit concluded that "ocean marine insurance" within the meaning of the Insurance Code included not only marine P & I policies for personal injury but also marine P & I policies for property damage.

### III.

■ The Court now turns to the specific issue at hand: is *Cushing*'s state law interpretation of the Louisiana Direct Action Statute irreconcilable with *Deshotels* and *Backhus* for marine P & I policies? The answer, this Court concludes, is an unequivocal yes.

These two cases teach that *Cushing* asked the wrong question. The question is not whether "marine protection and indemnity insurance" can also be "liability insurance," whether the statutory definition in La.R.S. 22:6(13)(e) overlaps with the statutory definition in La.R.S. 22:6(4); *Cushing, Deshotels,* and *Backhus* all answer that question yes. The proper question instead is whether a particular type of policy, which may or may not be a liability policy, constitutes "ocean marine insurance" within the meaning of the Insurance Code. Thus, *Cushing* erred in failing to distinguish between its WC/EL policy and its marine P & I policy.

As *Sifers* emphasizes, these two cases instruct courts to look not myopically to just the LIGA Law but instead broadly to

---

56. See ibid.

57. *Id.* at 291 (citation and footnote omitted).

58. *Id.* at 292.

59. 892 F.2d 386, 389–92 (5th Cir.) (per curiam), *modified in part on other grounds*, 897 F.2d 1288 (5th Cir.1990) (per curiam).

60. *Id.* at 391–92; *see also* text accompanying footnote 23 above.

61. *See Sifers,* 892 F.2d at 392.

62. *Id.* at 391.

the entire Insurance Code. Thus, it is not accidental that *Deshotels* cites the *Cushing* line of cases interpreting the Direct Action Statute and, more important, that *Deshotels* observes that " 'ocean marine' insurance ... is ... excluded ... from the scope of Part XIV, which ... includes the Louisiana direct action statute." [63] The structure of Part XIV parallels the structure of the LIGA Law: each should generally be interpreted liberally in favor of coverage, yet each expressly states that its provisions do not apply to "ocean marine insurance." For the LIGA Law, the court held in *Backhus*, the former interpretive guide cannot overrule the latter expression of clear legislative intent. There is no indication that the result should be any different for Part XIV, and specifically for the Direct Action Statute.

When the original version of the Direct Action Statute was enacted, the Legislature made no exception for ocean marine insurance. Thus, the plaintiff asserts that the Legislature intended the Direct Action Statute to apply to ocean marine insurance, and specifically to marine P & I policies. The observation may be true enough. Yet it is not helpful here, for it ignores that the Legislature may later express contrary legislative intent. In this instance, the observation ignores the Legislature's subsequent unambiguous expression in La.R.S. 22:611.

As the recent amendments to La.R.S. 22:611 show,[64] the Legislature is well-aware and capable of refining the intended effect of La.R.S. 22:611, which defines the scope of Part XIV, of which the Direct Action Statute is a part. "Accordingly, this court must presume that the legislature could have restricted the exception contained in R.S. [22:611] to ocean marine insurance affecting property had it desired to do so" [65] or could have provided that the "ocean marine insurance" exception in La. R.S. 22:611 does not apply to the Direct Action Statute.

Where the Legislature has added a specific exception for a broad portion of the Insurance Code, courts are not free to overlook the exception under the guise that the text of the Direct Action Statute (or isolated instances of dictum in cases where "ocean marine insurance" and marine P & I policies were not at all at issue),[66] if read alone, might appear to suggest that the Direct Action Statute applies to *all* liability policies.[67] "[S]pecific words within a statute may not be read in isolation from the remainder of the entire statutory scheme." [68] To adopt the plaintiff's position would be to render the "ocean marine" exception in La.R.S. 22:611 meaningless—a result the Louisiana Supreme Court advises should be avoided if possible.[69]

In sum, then, this Court holds that the Louisiana Supreme Court implicitly overruled the holding in *Cushing* and its progeny that under Louisiana state law, a direct action may be asserted against the underwriters to a marine P & I policy.[70] The

---

**63.** *Deshotels,* 538 So.2d at 992.

**64.** *See* text accompanying footnote 22 above.

**65.** *Backhus,* 549 So.2d at 291.

**66.** For this reason, the plaintiff's quotation from *Quinlan v. Liberty Bank & Trust Co.,* 1990 WL 27106, 1990 La. LEXIS 609, *3 (La. Mar. 12, 1990) ("All liability insurance comes within the provisions of the Louisiana Direct Action Statute, LSA R.S. 22:655.") (holding that a D & O policy issued to a Louisiana bank came within the Direct Action Statute), is misplaced. If read out of context as the plaintiff does, this dictum overstates the well-established caselaw. *See, e.g., Landry v. Travelers Indemnity Co.,* 890 F.2d 770, 772 & n. 1 (5th Cir.1989) (citing *Webb v. Zurich Insurance Co.,* 251 La. 558, 205 So.2d 398 (1967)). Further, the Supreme Court has withdrawn its decision in *Quinlan* from publication, *see* 558 So.2d 221 (hardbound edition); a rehearing is scheduled for December 3, 1990.

**67.** *See Logan v. Hollier,* 424 So.2d 1279, 1281 (La.App. 3d Cir.1982); *see also Landry,* 890 F.2d at 773.

**68.** *Matter of Thalheim,* 853 F.2d 383, 387 (5th Cir.1988); *see Fireside Mutual Life Insurance Co. v. Martin,* 223 La. 583, 66 So.2d 511, 512 (1953).

**69.** *See, e.g., Dore v. Tugwell,* 228 La. 807, 84 So.2d 199, 204 & n. 6 (1955).

**70.** The two 1989 cases upholding awards in direct actions against marine P & I underwriters —*Tesvich,* 547 So.2d 1106 (July 13, 1989), *writs denied,* 552 So.2d 383–84 (Nov. 27, 1989) and *Talbott Big Foot,* 887 F.2d 611 (Nov. 2, 1989)— were both decided before *Backhus* became final on December 7, 1989 under La.C.Civ.P. art. 2167. Further, in neither case did the underwriters assert that they were not subject to the Direct Action Statute. *See Talbott Big Foot,* 887 F.2d at 613 n. 2; *Tesvich,* 547 So.2d at 1122.

exception in La.R.S. 22:611 for "ocean marine insurance," which includes marine P & I policies, applies to the Louisiana Direct Action Statute.

## IV.

For these reasons, the Court adheres to its dismissal with prejudice of all claims against the Underwriters [71] and generally to its holding that the Direct Action Statute does not apply to P & I underwriters.

71. The plaintiff has still presented no evidence on the one hand that either of the Underwriters' policies was actually written in or delivered to Louisiana or on the other hand that the employer's sole or principal place of business is in Louisiana (or even, as he now asserts, that the employer is a Louisiana corporation). Further, he admits that his alleged accident did not occur in Louisiana. Thus, even if the Direct Action Statute were to apply to P & I underwriters in general, the record may not support an application of the statute in this instance. *Compare Landry,* 890 F.2d at 772–73 (citing *Signal Oil & Gas Co. v. Barge W–701,* 654 F.2d 1164, 1175 (5th Cir. Unit A 1981), *cert. denied sub nom. J. Ray McDermott & Co. v. Signal Oil & Gas Co.,* 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982) *and cert. denied sub nom. Sun Oil Co. v. Signal Oil & Gas Co.,* 455 U.S. 944, 102 S.Ct. 1441, 71 L.Ed.2d 656 (1982)) *with Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570, 574–75 (5th Cir.1990) *and Schexnider v. McDermott International, Inc.,* 688 F.Supp. 234, 236–38 (W.D.La. 1988). *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).