STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CW02-1478

ALEX M. LEGROS

VERSUS

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, ET AL.

**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NUMBER 10-15935
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

**********

BILLIE COLOMBARO WOODARD
JUDGE

**********

Court composed of Billie Colombaro Woodard, Michael G. Sullivan, and Billy
Howard Ezell, Judges.

WRIT DENIED.

Gregory P. Marceaux
Marceaux Law Firm
1800 Ryan Street, Suite 101
Lake Charles, Louisiana 70601
(337) 433-3300
Counsel for Plaintiff/Respondent:
    Alex LeGros

Billy Edward Loftin, Jr.
Attorney at Law
2901 Hodges Street
Lake Charles, Louisiana 70601
(337) 310-4300
Counsel for Plaintiff/Respondent:
    Alex LeGros

Randell E. Treadaway
Jessica G. Roux
Reich, Meeks & Treadaway, L.L.C.
3850 North Causeway Boulevard
Two Lakeway Center, Suite 1000
Metairie, Louisiana 70002
(504) 830-3999
Counsel for Defendant/Applicant:
    Great American Insurance
    Company of New York

Robert Edwin Torian
LaBorde & Neuner
Post Office Drawer 52828
Lafayette, Louisiana 70505-2828
(337) 237-7000
Counsel for Defendant/Respondent:
    Crick Insurance Agency, Inc.

Marshall M. Redmon
Virginia Y. Trainor
Phelps, Dunbar, L.L.P.
Post Office Box 4412
Baton Rouge, Louisiana 70821-4412
(225) 346-0285
Counsel for Defendant/Respondent:
U.S. Risk Brokers, Inc.

WOODARD, Judge.

Great American applied to this court for a supervisory writ, alleging that it can have no liability to Mr. LeGros for damages to his fishing vessel; therefore, the trial court erred in denying its motion for summary judgment. We find no error in the trial court's decision and deny Great American's writ, accordingly.

* * * * *

The Plaintiff, Mr. Alex LeGros, a self-employed commercial fisherman, had just unloaded his catch at Don Bailey's Fish House on June 5, 2001, when his vessel, M/V MISS ANGIE, caught fire. He and some of the deck and dock hands were able to extinguish the fire but not before it caused substantial damage to the vessel's living quarters and pilothouse.

Accordingly, Mr. LeGros filed a claim with his insurance company to recover his loss. It denied recovery, both, because his policy had expired three days before the fire and because he had violated the trading warranty designation of "port risk," which it claims voided the policy even before its expiration date. Mr. LeGros filed suit against The Crick Agency, Inc., (Crick), U.S. Risk Brokers, Inc. (U.S. Risk), and Great American Insurance Company of New York, f/k/a American National Fire Insurance Company (Great American).

Great American, a foreign insurance company authorized to and doing business in Louisiana, had issued Mr. LeGros a policy of limited coverage, on the vessel, from June 2, 2000 to June 2, 2001. Crick was Mr. LeGros' retail agent. Thus, he communicated directly with Crick to obtain the policy. Afterwards, Crick contacted U.S. Risk, one of the intermediate wholesale brokers with whom it had a contract, and informed it of Mr. LeGros' coverage needs. In turn, U.S. Risk communicated the information it obtained from Crick to various insurance companies with whom it contracted, seeking a company that would agree to issue Mr. LeGros a policy. Great American agreed to issue the policy, which consisted of hull insurance and protection and indemnity coverage. The policy contained the following "Trading Warranty:" "PORT RISK OUT OF COMMISSION CAMERON, LA." The policy does not define or describe the terms "trading warranty," "port risk," or "out of commission."

1

At the time that Mr. LeGros sought the policy on the M/V MISS ANGIE, the vessel was in port for repairs. Furthermore, he had been keeping it in port for a period of time before this because of his divorce. He alleges that he told the Crick agent that the vessel would only be in port for a couple of weeks for repairs, after which he intended to start fishing again. The Crick agent, however, alleges that Mr. LeGros knew that he was supposed to contact her before he took the vessel out of port. She was not aware that he was using it until she tried to reach him to discuss the renewal of his policy and was informed that he was unavailable because he was out fishing.

When he returned, he completed the renewal application and gave it to Crick. Crick submitted it to U.S. Risk, indicating that the delay in getting it to U.S. Risk was because Mr. LeGros had been out fishing. Facsimile records indicate that U.S. Risk passed along this information to Great American. At that time, presuming that Mr. LeGros had been using the vessel named in the policy for his fishing voyages, it told U.S. Risk that it would not be offering a renewal to Mr. LeGros and, furthermore, there was no existing coverage because the present policy was warranted "port risk." U.S. Risk informed Crick that Great American had declined to renew the policy and that it attempted to get a quote from other companies, but they declined to offer coverage. Whether Crick informed Mr. LeGros that his policy was not being renewed is disputed. The fire occurred on June 5, 2001, three days after the end of the policy term.

Mr. LeGros asserts that Great American and U.S. Risk had a duty to send him a notice that his policy was not going to be renewed and that they breached this duty. Great American moved for summary judgment, asserting that it did not have a duty to provide him with a notice of non-renewal and, even if it had renewed the policy, his breach of the trading warranty would have voided it. The trial court denied Great American's motion. Great American applied for a supervisory writ to this court.

Great American contends that it can have no liability for Mr. LeGros' loss, as a matter of law, and that the trial court should have dismissed it from the case, accordingly. Specifically, it claims: (1) that its policy is exempt from the Louisiana Insurance Code; therefore, it is relieved of providing policy holders notice of non-renewal; and (2) Mr. LeGros' use of the vessel outside of its "port risk" designation was a material breach of his contract which voided the policy.

2

**\* \* \* \* \***

**DUTY TO NOTIFY UNDER LOUISIANA LAW**

Louisiana Revised Statutes 22:636.4(D), which is applicable to renewals of commercial insurance, provides, in pertinent part:

> (1) An insurer may decide not to renew a policy if it delivers or mails to the first-named insured at the address shown on the policy written notice it will not renew the policy. Such notice of nonrenewal shall be mailed or delivered at least sixty days before the expiration date. . . . If the notice is mailed less than sixty days before expiration, coverage shall remain in effect under the same terms and conditions until sixty days after notice is mailed or delivered. . . .

> (2) Notice of nonrenewal shall not be required if the insurer or a company within the same insurance group has offered to issue a renewal policy, or where the named insured has obtained replacement coverage or has agreed in writing to obtain replacement coverage.

However, La.R.S. 22:636.4 is located in Part XIV of the Louisiana Insurance Code, which is entitled "The Insurance Contract." The provisions under Part XIV are explicitly limited. Specifically, the Code says that "[t]he applicable provisions of this Part shall apply to insurance *other than ocean marine* and foreign trade insurances."[1] (Emphasis added.) Traditional marine insurance, such as hull insurance, is considered ocean marine insurance.[2]

Nevertheless, the Louisiana Supreme Court, answering a certified question of law from the Fifth Circuit, concerning the ocean marine exclusion, stated:

> This language seems to indicate that the legislature intended for the exclusions to apply to only some of the sections of Part XIV. Had the legislature intended for the exclusionary language of La.R.S. 22:611 to apply to all of Part XIV, it would have left out the "applicable provisions" language and simply stated, "The provisions of this Part

---

[1]La.R.S. 22:611(A).

[2]*See* La.R.S. 22:1379(9). *See also Grubbs v. Gulf Int'l Marine, Inc.*, 625 So.2d 495 (La.1993).

3

shall apply to insurances other than ocean marine and foreign trade insurances."[3]

Afterwards, the court traced the history of the "direct action statute," the statute at issue in that case which is also found in Part XIV, and concluded that the statute applied to ocean marine policies notwithstanding the exclusion found in La.R.S. 22:611.[4]

Likewise, we find that the provision, requiring the insurer to send the insured a notice of non-renewal, is applicable to ocean marine insurance policies. The Louisiana insurance laws were codified in Act 195 of 1948.[5] However, as early as 1870, the U.S. Supreme Court had endorsed the application of international uniform rules, practice, and laws, regarding contracts of marine insurance.[6] Achieving this uniformity required the application of federal law rather than each state's law.[7] The Supreme Court continued its endorsement of applying federal law to marine insurance contracts until 1955.[8] Thus, in 1948, when the Louisiana insurance laws were codified, there was no need to subject marine insurance policies to those laws which would have been displaced, anyway, by federal maritime law.

However in 1955, the U.S. Supreme Court abandoned its position that federal rules should uniformly apply in marine insurance matters.[9] Instead, it concluded that where there is no judicially established federal admiralty rule, courts should apply state law, instead.[10] The Fifth Circuit recently concluded that, in deciding which law should govern, even when there is a federal admiralty rule, we should consider

---

[3]*Grubbs,* 625 So.2d at 503 (quoting *Giannouleas v. Phoenix Mar. Agencies, Inc.*, 621 So.2d 1131, 1135 (La.App. 1 Cir. 1993).

[4]*Grubbs*, 625 So.2d 495.

[5]1948 La. Acts No. 195. *See also Grubbs*, 625 So.2d 495.

[6]*See, e.g., New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. 1(1870).

[7]*Dunham*, 78 U.S. 1 (1870). *See also* Paula Hamilton Lee, *Untying the Gordian Knot and Opening Pandora's Box: The Need for a Uniform Federal Maritime Rule of Uberrimae Fidei with Respect to Marine Insurance*, 19 TUL.MAR.L.J. 411 (1995).

[8]*See Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368 (1955). *See also* Lee, *supra* note 7.

[9]*See Wilburn,* 348 U.S. 310.

[10]*Id.*

whether it constitutes "entrenched federal precedent," whether the state's law is materially different, and evaluate the state's interest in applying its law.[11]

In the instant case, we find no federal rule which addresses the issue of an insurer's duty, or lack of, to provide notice of non-renewal of a marine insurance policy. Thus, we conclude that La.R.S. 22:636.4 applies to marine insurance policies. Furthermore, we believe that federal law would surely dictate the same result as our state law. The federal rules governing marine insurance contracts developed from the *uberrimae fidei* doctrine.[12] "The doctrine of uberrimae fidei in marine insurance law requires both the insurer and the assured to exercise 'the highest degree of good faith' to inform each other of every fact material to the risk to be insured."[13] We cannot imagine that the doctrine of *uberrimae fidei* would not impose the same duty on the insurer; namely, the duty to notify its insured of its choice not to renew his policy.

It is undisputed that Great American did not send a notice, directly to Mr. LeGros, that it was not renewing his policy. Thus, whether it fulfilled its duty by disseminating the information to another party requires a determination of the agent/principal relationships, if any, among all four parties. Whether an agency relationship exists between parties is a question of fact and must be determined on the particular circumstances in each case.[14] Accordingly, this issue cannot be disposed of on summary judgment.

Nonetheless, according to La.R.S. 22:636.4, failure to provide such notice results in continued coverage "under the same terms and conditions" as the previous policy. Accordingly, Great American asserts that there is no coverage under its policy because Mr. LeGros breached the "port risk" trading warranty, which voided the policy.

---

[11]*Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir.), *cert. denied*, 502 U.S. 901, 112 S.Ct. 279 (1991).

[12]*See* Lee, *supra* note 7.

[13]David B. Sharpe, James E. Mercante, Diane M. Butler & Todd A. Zilbert, *Recent Developments in Maritime Law,* 19 TUL.MAR.L.J. 301, 343 (1995) (citing *Albany Ins. Co. v. Horak*, 1994 AMC 273 (E.D.N.Y. 1993)).

[14]*Venable v. U.S. Fire Ins. Co.*, 02-505 (La.App. 3 Cir. 10/30/02), 829 So.2d 1179.

**BREACH OF TRADING WARRANTY**

Great American alleges that Mr. LeGros' violation of the "port risk" designation automatically voided the policy. Relying on *Forrester v. Arco Oil & Gas Co.,*[15] Great American asserts that the policy was void from the moment the vessel left port. We cannot agree. *Forrester* is not instructive in the instant case. In that case, the endorsement, itself, "provided that the vessel was covered only when it remained in port; once the vessel commenced voyage, the coverage would terminated [sic]."[16] The *Forrester* court continued, "Indisputably, the accident occurred after the vessel had left port and commenced a voyage."[17]

Thus, there are two important distinctions which render *Forrester* inapplicable to the instant situation. First, the policy in *Forrester* defined the port risk designation and, also, included the penalty for violating it. Thus, the court was construing language within the policy. In the instant case, we must determine what the law provides when the policy is silent. Secondly, the vessel in *Forrester* was in violation of the policy provisions at the time of the accident. Therefore, the court was not required to determine coverage in a situation where the vessel had committed a violation of the policy before the accident but was no longer in violation at the time of the accident. And, most significantly, the parties conceded that there was no coverage under the policy; thus the *Forrester* court did not, specifically, address the issue.[18]

Like *Forrester*, the other cases that the parties cite involve an accident that happened *while* the vessel was in violation; thus, it was unnecessary in those cases for the courts to determine the precise effect, *per se*, of the respective violations.

Therefore, the facts in the instant case present a *res nova* issue. Although we find no cases that squarely address the effects of a previous violation of a port risk designation, when the vessel is no longer in violation at the time of the accident, the Fifth Circuit has stated, "[a] warranty as to the place where the policy stipulates the

---

[15]No.CIV.A.88-777, 1989 WL 114006 (E.D.La. Sept. 25, 1989). *See also Forrester v. Arco Oil & Gas Co.,* No. CIV.A.88-777, 1991 WL 110389 (E.D.La. June 13, 1991).

[16]*Forrester*, 1991 WL 110389 at *1.

[17]*Id*. at *1.

[18]*Forrester*, 1989 WL 114006.

insured vessel is to be located during the period covered by the policy makes the right of the insured to recover for damages or loss dependent upon the vessel being at the stated place *when the damage or loss occurred*."[19] As Mr. LeGros points out, the vessel was in port at the time of the fire. Therefore, we do not find that his previous violation automatically voided his policy.

An "insurer is required to clearly express exclusions to its insuring obligations and . . . any doubt or ambiguity is to be resolved against the insurer . . . and in favor of what reason and probability dictate was intended by the parties with respect to coverage."[20] We find that the "port risk" designation is ambiguous when read in conjunction with the "HELD COVERED CLAUSE" which states:

> PROVIDED, HOWEVER, SHOULD THE VESSEL AT THE EXPIRATION OF THIS POLICY BE AT SEA, OR IN DISTRESS, OR AT A PORT OF REFUGE OR CALL, SHE SHALL, PROVIDED PREVIOUS NOTICE BE GIVEN TO THE UNDERWRITERS, BE HELD COVERED AT A PRO RATA DAILY PREMIUM TO HER NEXT RETURN TO FIRST PORT IN THE UNITED STATES.

Additionally, while Mr. LeGros' testimony was unclear regarding whether he understood what the "port risk" designation meant, he alleges that, when he applied for the policy, he informed Crick that he would be putting the vessel back in navigation in the next couple of weeks after he had completed the repairs. Whether Crick told him that he needed to notify them when the repairs were finished and before he took it on a voyage is disputed. The determination of this factual dispute bears on what the parties reasonably intended concerning coverage. In fact, ascertaining what the parties reasonably intended regarding coverage, in the instant case, will require a survey of all of the facts. Therefore, we agree with the trial court that summary judgment in Great American's favor is inappropriate.

Furthermore, even if it is ultimately determined that there is no coverage under the policy between Great American and Mr. LeGros, nevertheless, he should have the opportunity to demonstrate whether Great American's breach of its duty not to send notice of its non-renewal was a cause of his failure to obtain insurance covering the

---

[19]*Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 383 (5th Cir. 1987) (quoting *Robinson v. Home Ins. Co.,* 73 F.2d 3, 4 (5th Cir. 1934).

[20]*Graham,* 824 F.2d at 383 (quoting *Benton Casing Serv., Inc. v. Avemco Ins. Co.,* 379 SO.2d 225, 232 (La.1979)).

vessel at the time of the loss, therefore, contributing to damages his lack of coverage caused.

While we express no opinion on these issues, we agree with the trial court that there are mixed questions of law and fact, in dispute, in this case, making it inappropriate for a decision on summary judgment. Thus, we deny Great American's writ, finding that the trial court was correct in denying summary judgment in its favor.

## CONCLUSION

We agree with the trial court that disputed issues of material fact preclude Great American's dismissal on summary judgment. Therefore, we deny Great American's writ. We tax costs associated with this writ to Applicant/Great American.

**WRIT DENIED.**